MILLER (SMITH v.). See Case No. 13,080.

---

## Case No. 9,591.

### MILLER v. STEWART.

[4 Wash. C. C. 26.] [1]

Circuit Court, D. New Jersey. April Term, 1820.

PRINCIPAL AND SURETY — BOND — INTERLINEATION —CONSENT—KNOWLEDGE—RELEASE.

1. Debt on bond given by the defendant and others to the plaintiff, as collector of direct taxes and internal duties.

2. A surety cannot at law or in equity be bound further than by the very terms of his contract, and if the principal and the obligee change the terms of it without his consent, the surety is discharged.

[Cited in brief in Field v. Brokaw, 148 Ill. 658, 37 N. E. 80. Cited in Hunt v. Smith, 17 Wend. 180: Palmer v. Yarrington, 1 Ohio St. 260; Bank of Steubenville v. Carrol, 5 Ohio, 215. Distinguished in Dunham v. Downer, 31 Vt. 259.]

3. Where an interlineation had been made in a bond after its execution, without the knowledge of the surety, by which additional duties were to be performed by the collector, the surety could not be held responsible for those duties, stated in the bond before the interlineation; and the bond was entirely void.

[This was an action by Ephraim Miller against Thomas Stewart.]

Before WASHINGTON, Circuit Justice, and PENNINGTON, District Judge.

WASHINGTON, Circuit Justice. This case comes before the court upon demurrers to the fourth and fifth pleas. The declaration is upon a bond executed by the defendant and others to the plaintiff, collector of the direct taxes and internal duties for the fifth collection district of New Jersey. The condition recites, that the plaintiff, collector as aforesaid, hath, by virtue of authority vested in him by

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

the laws of the United States, appointed S. C. Ustick (one of the obligors) deputy collector of direct taxes and internal duties in the fifth collection district of New Jersey, for the townships of Nottingham, Chesterfield, Mansfield, Springfield, New Hanover, Washington, Little Egg Harbour, and Burlington, in the county of Burlington, and then proceeds, "that if the aforesaid Ustick has discharged, and shall continue truly and faithfully to discharge the duties of said appointment, according to law, and shall faithfully collect and pay according to law all moneys assessed upon the said townships, then, &c." This bond bears date the 4th of January, 1814, and the breach in the declaration is, "that after the making of the bond, to wit, on the 31st of December, 1817, the said Ustick, as deputy collector aforesaid, collected of internal duties and taxes assessed on the several townships in the condition aforementioned, the sum of $2595; which said sum, on the day and year last mentioned, according to law, and the condition aforesaid, ought to have been paid to the plaintiff, but which is still in arrear and unpaid, contrary, &c."

The fourth plea to this declaration, after admitting the appointment of the said Ustick, under the hand and seal of the plaintiff, to be deputy collector as set forth in the condition of the bond, and that the defendant, at the request of the said Ustick, did, as one of his sureties, execute the said bond, proceeds to state that the plaintiff, after the execution of the said appointment, so as aforesaid made, of the said Ustick, and after the execution of the said bond, viz. on the same day, and before the said Ustick had acted under the same, did, with the assent of the said Ustick, alter the said appointment so as aforesaid made, by inserting or causing to be interlined therein, "Willingborough," making it by such interlineation, an appointment for the said township of Willingborough, in the county of Burlington aforesaid, which interlineation and change was made without the knowledge, privity, or consent of the said defendant; and further, that the said Ustick did accept to act and account under the said appointment so altered, and hath continually ever since so acted and accounted as the plaintiff's deputy for the said township of Willingborough, and the eight townships mentioned in the condition of the said bond, under the said altered or new appointment, for which cause, &c. the defendant is discharged from any liability, &c.

The fifth plea, after admitting, as in the fourth plea, and also that Ustick might, on the 31st of December, 1817, have been in arrears for collections made by him to the amount stated in the declaration, proceeds to state, that at the time of the appointment so as aforesaid made, and until the said 31st of December, 1817, it was by law required of the said Ustick to transmit to the plaintiff, at the expiration of every month after he commenced his collections, a statement of the collections by him made during the month, and to pay over quarterly the moneys by him collected, and to complete the collection of all sums assigned to him for collection, pay over the same, and render his final account to the plaintiff, within six months from the time he received the collection lists, and in failure of his so doing, the plaintiff was by law empowered to remove said Ustick from his said office, and immediately to sue for and recover the arrearages for which he was liable. The plea then proceeds to state that though Ustick did not, at any time from the said 4th of January, 1814, account and pay over in the manner prescribed by law, yet the plaintiff did not remove him from his said office, nor prosecute him for his defaults, and for the arrearages due from him, nor give notice to the defendant of such his defaults, but fraudulently and negligently, and in violation of his duty, permitted him to continue in office, and during all the time to the commencement of this suit, the plaintiff did fraudulently and unlawfully conceal from the defendant the defaults of said Ustick, and his being so in arrear. The plea then alleges the insolvency of Ustick and the other sureties, and concludes, by reason of all which, &c. the said defendant is discharged.

The question which arises upon the fourth plea is, whether the alteration made in the appointment of Ustick, after the execution of the bond, and without the knowledge or consent of the defendant, discharges him from his obligation? The ground work of this plea is, not that the obligation on which this action is brought, ceased to be the deed of the defendant, because of the alteration made in the appointment of Ustick; but that the contract of guarantee into which the defendant had entered, having been changed by the obligee and the principal in the bond without his consent, he is, by such change, discharged from his obligation for the official conduct of the principal.

No principle of law is better settled at this day, than that a surety cannot, either at law or in equity, be bound farther than he is so by the very terms of his undertaking, and that if the parties to the original contract think proper to change the terms of such contract without the consent of the surety, (which unquestionably they have a right to do) the surety is discharged. The reason of this rule is obvious. The surety is not bound by the contract as it was entered into by him, because that contract, being afterwards altered by the principal parties to it, it is no longer the same, but a different contract, for the performance of which the surety came under no obligation. Neither is he bound by the contract in its altered form, because he is no party to it. It cannot be split into parts, without the consent of the surety, so as to be his contract to a certain extent, and not his contract for the residue of it. Neither is it of any consequence that the alteration in the contract is trivial, nor even that it is for the

advantage of the surety. For if the obligee, by a subsequent agreement with his debtor, the principal obligor, agree with him to enlarge the time stipulated in the bond for payment or performance, even for a day, and upon the terms of the principal paying off a part of the debt immediately, or giving additional security, both of which considerations are manifestly advantageous to the surety by diminishing his responsibility; still, if such agreement receive not the sanction of the surety, he is discharged upon the ground that the terms of the contract to which he was bound, being changed without his consent, it is a different contract from that which he engaged to guaranty, and consequently not his contract. "Non haec in foederá veni," is an answer in the mouth of surety; from which the obligee can never extricate his case, however innocently, and by whatever kind intentions to all parties he may have been actuated.

With these principles in view, I come to their application to the present case; and the main inquiry must be into the legal effect of the interlineation stated in this plea, and acknowledged by the demurrer to have been made without the consent of the defendant. The appointment of Ustick was incorporated into, and became part of the condition of this bond. Ustick is there stated to be a deputy collector, duly appointed by the collector and obligee, for eight townships distinctly described; and the defendant undertook that the said Ustick should faithfully discharge the duties of his said appointment according to law and should faithfully collect and pay, according to law, all moneys assessed upon those townships. The contract, then, in effect, was, that the defendant should guaranty the good conduct of an officer, then clothed with powers and duties defined and circumscribed within a specified sphere, in which he might legitimately act as such officer. The principal parties to that contract afterwards agreed to enlarge the sphere of action of that officer, and to change the appointment recited in the condition of the bond, in such manner as to constitute him a deputy collector for nine townships; and this was effected by an interlineation in the original appointment. It is true that the same individual may be a collector for eight townships, and also for an additional township; but is he the same officer? I think not. His official designation, his duties and his responsibilities are different in the two appointments. If the plaintiff, before or after the execution of this bond, had appointed Ustick his deputy for as many other townships as he thought proper, the defendant could raise no objection on that ground to invalidate his obligation, because such appointments formed no part of his contract, and Ustick would have been not less the officer to which that contract referred. But when he ceases to be the same officer as the condition of the bond designated him, by a change of the instru-

ment of appointment to which that bond refers, and all that without the consent of the surety; how can it be contended that the contract continues to be the same that it was at the time it was entered into? If Ustick had been appointed by a separate instrument a deputy collector for the ninth township, it must be admitted that he would have held two distinct offices; and the collector might well have required of him new securities, on account of his new office. The only difference between this case and the one supposed is, that in the former he has but one instrument and appointment, and in the latter he would have two; but this only shows that his character is essentially changed by the alteration made in the original appointment.

There is another view of this question which still remains to be taken. The law of the United States requires that the deputy collector should be appointed by an instrument under the hand and seal of the collector, and it sufficiently appears by the pleadings in this case, that Ustick was so appointed. What is the legal effect of the alteration made in the original appointment which the deputy collector afterwards accepted and acted under? It amounted, I think, to a surrender of the first appointment, and the making and delivery of a new deed of appointment. It is laid down in Co. Litt. 232, that if the feoffee grant the deed to the feoffor, though by parol, such grant is good, and that both the deed and property belong to the feoffor. In the case of Eppes v. Randolph, 2 Call, 103, it was decided that a re-acknowledged deed is good, and takes effect from the time of the re-acknowledgment; that the estate was vested in the grantee whilst he held the deed, the evidence of his title; but that when he surrendered the deed to the grantor, his legal estate ceased, and the grantor was at liberty to grant the same to him, or to any other person, and that he might either destroy the deed and make a new one, or, by re-delivering it, give it force as a new deed from that time. A deed once executed and delivered cannot be altered by the grantor, and yet retain its validity, except upon the supposition of its having been surrendered by the grantee to the grantor and of a new delivery after the alteration has been made. But the surrender and re-delivery of the deed, and more especially if the terms of it have been changed by consent of the parties to it, constitutes it to all intents and purposes a new deed. If this be so, it is then most clear that the contract of the defendant as surety for Ustick, under the appointment recited in the condition of his bond, had nothing to operate upon, after that appointment was changed.

It has been contended by the plaintiff's counsel, that no inconvenience can result to the defendant by the change made in the appointment of Ustick, because the declaration confines the plaintiff's demand to the taxes and duties collected by him in the eight town-

ships to which he was originally appointed. This argument is specious and has the imposing appearance of a compromise fairly offered, to get rid of a legal objection to the plaintiff's demand. But it affords no answer to that objection, which is, that the defendant's contract has been changed without his consent, and that he ceases to be bound by it. If the defendant had become surety for the performance, by Ustick, of certain articles of agreement, and those parties had afterwards thought proper to strike out some of the articles, or to add others; it would be no answer to the defendant's plea that the contract was not the same of which he had guarantied the performance, to say that the breaches laid in the declaration were confined to the original articles.

Upon the whole, I am of opinion that the fourth plea is a legal bar to the plaintiff's demand, and that the demurrer must be overruled. It is unnecessary to give any opinion on the fifth plea.

PENNINGTON, District Judge. I am perfectly satisfied that the justice of this case is with the plaintiff; I must therefore require some strong authority to induce me to sweep his right from under him. There are some contradictory sayings in the books respecting the effect of alterations in deeds; (but the best authorities lay it down, that an alteration in a deed by the consent of the parties does not destroy it, even if the alteration is in a material part.) 4 Com. Dig. 169, tit. "Fact," and Woolley v. Constant, 4 Johns. 54. Mr. Justice Thompson, in delivering his opinion in this last case, cites a case from Moore, K. B. 547, to this effect, viz. a bond was given containing a recital of a former bond or recognizance, against which the one in question was taken by way of indemnity. The former bond was recited with a blank for the Christian name and addition of the obligee, and this blank was afterwards filled up. In a suit on the bond of indemnity this matter was specially pleaded, and the plaintiff replied that the blank was filled up by the assent of the obligor, and on demurrer judgment was given for the plaintiff. This, and the case of Woolley v. Constant, in point of principle, are the same as the case under consideration. The instrument appointing Ustick a deputy, is not void by the alteration. As to its having been surrendered and re-delivered, as suggested by one of the counsel for the defendant, it appears to me not to be founded in fact; the plea does not say so, and I cannot think myself called upon to presume it. If the alteration affected the rights of the defendant, or increased his responsibility, it would alter the case; but his liability is not increased; he stands in the precise situation as if no alteration had been made; and it appears to me that he comes with an ill grace, to lay hold of an indulgence given to his friend, as the means of shaking off a solemn responsibility which he had voluntarily put himself under to benefit him. If sureties are favoured, they are not discharged from their legal obligations. I confess that it gives me pain, to differ in opinion with the learned judge presiding in this court; but I am bound to deliver such an opinion as my conscience and judgment point out to me. I must therefore say that I am of opinion that the plaintiff is entitled to judgment.

Judge PENNINGTON having dissented, and the court being divided in opinion, the case was adjourned to the supreme court.

The certificate of the supreme court was in favour of the defendant. 9 Wheat. [22 U. S.] 680.

[The opinion of Circuit Justice Washington was sustained by the supreme court, Mr. Justice Johnson and Mr. Justice Todd dissenting.]